UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-9932 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| FIRST EAGLE ALTERNATIVE CAPITAL | : **SECURITIES EXCHANGE ACT OF** |
| BDC, INC., CHRISTOPHER J. FLYNN, | : **1934** |
| EDMUND P. GIAMBASTIANI, JR., NANCY | : |
| HAWTHORNE, JAMES D. KERN, | : **JURY TRIAL DEMANDED** |
| DEBORAH MCANENY, JANE MUSSER | : |
| NELSON, , | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against First Eagle Alternative Capital BDC, Inc. ("First Eagle or the "Company") the members First Eagle's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between First Eagle and Crescent Capital BDC, Inc. ("Crescent Capital").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form N-14 (the

"Registration Statement") to be filed on November 4, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby (i) Echelon Acquisition Sub, Inc. ("Merger Sub") will merge with and into the Company, with the Company continuing as a wholly owned subsidiary of Crescent Capital; then (ii) First Eagle will merge with and into Echelon Acquisition Sub LLC ("Merger Sub II"), with Merger Sub II continuing as the surviving company and a wholly owned subsidiary of Crescent Capital (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on October 3, 2022 (the "Merger Agreement"), each First Eagle stockholder will receive a combination of (i) Crescent BDC shares valued at 100% of Crescent BDC's net asset value per share at the time of closing of the transaction in an aggregate number equal to First Eagle BDC's net asset value at closing, up to a maximum of 19.99% of outstanding Crescent BDC shares at the time of the closing ("Share Issuance Cap"); (ii) cash from Crescent BDC for any amounts not paid in Crescent BDC shares due to the Share Issuance Cap; and (iii) an additional cash payment from Crescent Cap Advisors, LLC of $35 million in aggregate, or approximately $1.17 per share of First Eagle BDC stock. The exchange ratio for the stock component of the merger consideration and the amount of cash from Crescent BDC pursuant to clauses (i) and (ii) in the foregoing sentence will be determined by the respective net asset values of Crescent BDC and First Eagle BDC at the time of closing. In addition, First Eagle BDC stockholders may make an election to receive the portion of the merger consideration paid by Crescent BDC pursuant to such clauses (i) and (ii) in either Crescent BDC shares or in cash, subject to pro rata cut backs such that the aggregate amount of shared issued and cash paid by Crescent BDC are equal to the amounts described in such clauses (i) and (ii).

3. As discussed below, Defendants have asked First Eagle's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to First Eagle's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the New York Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of First Eagle stock and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Christopher J. Flynn has served as a member of the Board since 2015 and is the Chief Executive Officer of the Company.

11. Individual Defendant Edmund P. Giambastiani, Jr. has served as a member of the Board since 2016.

12. Individual Defendant Nancy Hawthorne has served as a member of the Board since 2009.

13. Individual Defendant James D. Kern has served as a member of the Board since 2014.

14. Individual Defendant Deborah McAneny has served as a member of the Board since 2015.

15. Individual Defendant Jane Musser Nelson has served as a member of the board since 2018.

16. Defendant First Eagle is a Delaware corporation and maintains its principal offices at 500 Boylston Street, Suite 1200, Boston MA 02116. The Company's stock trades on the New York Stock Exchange under the symbol "FCRX."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

19. First Eagle is a non-diversified closed-end management investment company. The Company's investment objective is to generate both current income and capital appreciation, primarily through investments in privately negotiated debt and equity securities of middle market companies. The Company invests primarily in debt securities of sponsored issuers based in the middle market, mainly in the United States. Its debt investments consist of directly originated first lien senior secured loans, including unitranche investments. It also makes second lien secured loans and subordinated, or mezzanine, debt investments, which include an associated equity component, such as warrants, preferred stock or similar securities, and direct equity investments. The Company also provides advisory services to managed funds. The Company's investment activities are managed by its investment adviser, First Eagle Alternative Credit, LLC.

20. On October 4, 2022, the Company announced the Proposed Transaction:

> LOS ANGELES and BOSTON, Oct. 04, 2022 (GLOBE NEWSWIRE) -- Crescent Capital BDC, Inc. ("Crescent BDC" or the "Company") (NASDAQ: CCAP) and First Eagle Alternative Capital BDC, Inc. ("First Eagle BDC") (NASDAQ: FCRD) announced today that they have entered into a definitive merger agreement (the "Merger Agreement") under which Crescent BDC will acquire First Eagle BDC (the "Transaction"). The combined company, which will remain externally managed by Crescent Cap Advisors, LLC, a subsidiary of Crescent Capital Group ("Crescent"), is expected to have approximately $1.6 billion of investments on a pro forma basis. The boards of directors of both companies, the independent directors of First Eagle BDC and the independent directors of Crescent BDC have approved the Transaction, which is expected to close as early as the fourth quarter of 2022.

Under the terms of the Merger Agreement, First Eagle BDC stockholders are expected to receive a combination of (i) Crescent BDC shares valued at 100% of Crescent BDC's net asset value per share at the time of closing of the transaction in an aggregate number equal to First Eagle BDC's net asset value at closing, up to a maximum of 19.99% of outstanding Crescent BDC shares at the time of the closing ("Share Issuance Cap"); (ii) cash from Crescent BDC for any amounts not paid in Crescent BDC shares due to the Share Issuance Cap; and (iii) an additional cash payment from Crescent Cap Advisors, LLC of $35 million in aggregate, or approximately $1.17 per share of First Eagle BDC stock. The exchange ratio for the stock component of the merger consideration and the amount of cash from Crescent BDC pursuant to clauses (i) and (ii) in the foregoing sentence will be determined by the respective net asset values of Crescent BDC and First Eagle BDC at the time of closing. In addition, First Eagle BDC stockholders may make an election to receive the portion of the merger consideration paid by Crescent BDC pursuant to such clauses (i) and (ii) in either Crescent BDC shares or in cash, subject to pro rata cut backs such that the aggregate amount of shared issued and cash paid by Crescent BDC are equal to the amounts described in such clauses (i) and (ii).

Assuming a transaction based on respective June 30, 2022 net asset values for Crescent BDC ($639.2 million, or $20.69 per share) and First Eagle BDC ($158.7 million, or $5.30 per share), taking into account certain estimated transaction expenses and post-closing adjustments and subject to the election mechanics described in the foregoing paragraph, First Eagle BDC stockholders would have received (i) $0.62 per share in cash from Crescent BDC; (ii) 0.2063x shares of Crescent BDC common stock for each share of First Eagle BDC common stock, resulting in approximately 6.2 million newly issued Crescent BDC shares; and (iii) $1.17 per share in cash from Crescent Cap Advisors, LLC. In aggregate, total consideration based on respective June 30, 2022 net asset values of Crescent BDC and First Eagle BDC represents approximately $180.1 million or $6.02 per First Eagle BDC share, representing a premium of 14% to First Eagle BDC's net asset value per share of $5.30. On a market value basis, based on the closing stock price of Crescent BDC common stock on October 3, 2022 ($14.89 per share), the Transaction represents total consideration for First Eagle BDC stockholders of approximately $145.6 million or $4.86 per share, representing a 66% premium to the closing stock price of First Eagle BDC common stock on October 3, 2022. Following the Transaction, and assuming June 30, 2022 net asset values, Crescent BDC's pro forma equity base is expected to be approximately $758 million and

Crescent BDC stockholders and First Eagle BDC stockholders are expected to own approximately 83% and 17%, respectively, of the combined company.

In addition, Sun Life, which owns a majority interest in Crescent, has committed to provide secondary-market support and will purchase $20 million of the combined company's common stock via a share purchase program over time following the consummation of the Transaction.

In connection with the closing of the proposed Transaction, First Eagle BDC's 5.00% senior unsecured notes due May 25, 2026 are expected to remain outstanding and will be assumed by a subsidiary of Crescent BDC.

Crescent BDC believes that the increased size and scale of the combined company will create numerous strategic and financial benefits to stockholders and will position the combined company to capitalize on favorable market conditions. Including the financial support provided by Crescent and Sun Life, it is anticipated that the combination will provide the following benefits:

- **NII Accretion:** Combination is expected to provide immediate adjusted net investment income accretion;

- **Crescent BDC Share Liquidity:** Pro forma trading liquidity profile after closing as implied by the public BDC peer set suggests a meaningful increase in Crescent BDC's average daily trading volume;

- **Expansive and Diversified Portfolio:** The combined portfolio is expected to have 208 portfolio companies with top 10 companies representing approximately 16% of the portfolio on a pro forma basis;

- **Financial Flexibility:** The combined entity is expected to achieve greater business resilience and financial flexibility through enhanced access to debt capital markets; and

- **Reduced Operating Expenses**: Over $5 million of identified annual expense synergies associated with the combination driven by redundant general & administrative expenses across two platforms.

"We are very excited to announce that we have entered into an agreement to purchase First Eagle BDC. We expect this combination will be accretive to core earnings and provide many financial and strategic benefits to our stockholders as we further enhance our scale and position," said Jason Breaux, President and Chief Executive Officer of Crescent BDC. "Similar to the strategy we successfully utilized in our acquisition of Alcentra Capital in 2020, we plan to leverage our robust origination platform to selectively rotate legacy First Eagle BDC's portfolio into Crescent directly originated investments over time. We are confident in our ability to maximize long-term value for both Crescent BDC and First Eagle BDC stockholders."

"For over 30 years, we have differentiated ourselves in the marketplace, strategically growing our asset base across multiple economic and business cycles to be more effective and relevant to our clients, both our investors and the private equity community whose companies we finance," commented Jean-Marc Chapus and Mark Attanasio, Co-Founders and Managing Partners of Crescent. "The growing demand for capital from middle market borrowers has created an even greater need for flexible capital providers like us, and we believe the addition of First Eagle BDC further augments our relevance in the market."

"We are excited to have entered into this mutually beneficial combination with Crescent BDC," commented Chris Flynn, Chief Executive Officer of First Eagle BDC. "We believe unifying these complementary portfolios to form a larger-scale BDC with increased investment capacity and portfolio diversification will offer stockholders a strong platform for long-term growth. This transaction will also enable First Eagle Alternative Credit to focus our resources on deploying capital for our direct lending strategy where we have strong momentum."

First Eagle Investment Management LLC, which accounts for an approximately 17% ownership interest in First Eagle BDC, has entered into a voting agreement that requires it to vote its First Eagle BDC shares in favor of the Transaction subject to the terms of such agreement.

Consummation of the Transaction is subject to First Eagle BDC stockholder approval, customary regulatory approvals and other customary closing conditions.

Wells Fargo Securities served as sole financial advisor and Kirkland & Ellis LLP served as legal counsel to Crescent BDC. Keefe,

Bruyette and Woods (KBW), *A Stifel Company*, served as financial advisor and Simpson Thacher & Bartlett LLP served as legal counsel to First Eagle BDC.

\* \* \*

21. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that First Eagle's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

22. On November 4, 2022, First Eagle and Crescent Capital jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for First Eagle*

23. With respect to KBW's *Selected Companies Analysis for FCRD*, the Registration Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

24. With respect to KBW's *Selected Companies Analysis for CCAP*, the Registration Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

25. With respect to KBW's *Selected Transactions Analysis*, the Registration Statement fails to disclose the financial metrics and multiples for each transaction selected for the analysis.

26. With respect to KBW's *Dividend Discount Analysis of FCRD*, the Registration Statement fails to disclose: (i) the implied terminal value of the Company; (ii) the inputs and assumptions underlying the terminal multiple range from .70x to 1.00x; (iii) the inputs and assumptions underlying the discount rates ranging from 13% to 15.0%; and (iv) the inputs and assumptions underlying the terminal dividend yield range of 9.0% to 11.0%.

27. With respect to KBW's *Dividend Discount Analysis of CCAP*, the Registration Statement fails to disclose: (i) the implied terminal value of Crescent Capital; (ii) the inputs and assumptions underlying the terminal multiple range from .80x to 1.00x; (iii) the inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%; and (iv) the inputs and assumptions underlying the terminal dividend yield range of 8.5% to 18.40%.

28. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

29. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

30. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

31. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

32. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

33. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

34. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. The Individual Defendants acted as controlling persons of First Eagle within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of First Eagle, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of First Eagle, including the content and


dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

37. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

38. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of First Eagle, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

39. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

40. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

41. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

42. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 22, 2022           By:  **MELWANI & CHAN LLP**

*/s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*